**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIDLAND INDUSTRIES, INC., | ) | |
| on behalf of itself | ) | |
| and all similarly situated persons, | ) | CLASS ACTION COMPLAINT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| VOLKSWAGEN GROUP | ) | |
| OF AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Midland Industries ("Plaintiff"), individually and on behalf of all others similarly situated, allege the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel.

**NATURE OF THE ACTION**

**1.** This case seeks damages and other relief for consumers harmed by Defendant's marketing and sale of vehicles that do not perform as promised and promoted.

**2.** The Defendant ("Defendant" or "Volkswagen") installed "defeat devices" in Volkswagen and Audi vehicles sold in the United States ("Affected Vehicles") including the vehicle purchased by the Plaintiff.

**3.** The "defeat devices" consisted of a set of programmed directions in the Affected Vehicles' engine control computers.

**4.** The "defeat devices" detect when an Affected Vehicle is being tested for emissions, and send directions that change the operation of the Affected Vehicles in ways that drastically

reduces their emissions rates, during testing, below the emissions rates during normal operation, ensuring that detected emissions meet EPA pollutant standards.

5.      When the Affected Vehicles emissions testing is complete, the "defeat devices" detect the change, and switch off the full emissions controls, returning the Affected Vehicles to their usual settings, which allow the Affected Vehicles to produce much higher levels of pollutants, emitting, *e.g*, NOx at up to 40 times the legal standard allowed to vehicles in normal operation.[1]

6.      Federal law required Volkswagen to certify to the EPA that the Affected Vehicles met applicable federal emissions standards to control air pollution.

7.      By manufacturing and selling cars with "defeat devices" that allowed the Affected Vehicles' elevated levels of emissions to escape detection under normal testing, and by certifying the Affected Vehicles' claimed compliance with emissions standards to the EPA, Volkswagen violated the Clean Air Act, 42 U.S.C. §§ 7522(a)(1), (3)(B)

8.      According to the U.S. Environmental Protection Agency (the "EPA"),Volkswagen installed its emission "defeat device" in at least the following diesel Affected Vehicles:

    2009 Volkswagen Jetta and Jetta Sportwagen;
    2010 Volkswagen Golf, Jetta and Jetta Sportwagen; Audi A3;
    2011 Volkswagen Golf, Jetta and Jetta Sportwagen; Audi A3;
    2012 Volkswagen Beetle, Beetle Convertible, Passat, Golf, Jetta and Jetta Sportwagen; Audi A3;
    2013 Volkswagen Beetle, Beetle Convertible, Passat, Golf, Jetta and Jetta Sportwagen; Audi A3;
    2014 Volkswagen Beetle, Beetle Convertible, Passat, Golf, Jetta and Jetta Sportwagen; Audi A3;
    2015 Volkswagen Beetle, Beetle Convertible, Passat, Golf, Jetta and Jetta Sportwagen; Audi A3

---

[1] The term NOx refers to nitrogen oxides, which interact with volatile organic compounds ("VOCs") in the presence of sunlight to create low level ("tropospheric") ozone.  Ozone reacts easily with lung membranes, and is linked to respiratory problems.

The Environmental Protection Agency ("EPA") and other regulators and law enforcement entities are currently investigating whether the Defendant installed the device in other cars. Additional vehicle models and model years may thus be added to this list when new facts are discovered. EPA has ordered Defendant to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation.

**9.** On September 21, 2015, *The Wall Street Journal* reported that the U.S. Department of Justice, through its Environmental and Natural Resources Division, is conducting a criminal probe of Volkswagen over its alleged cheating on U.S. emissions tests. In addition, Volkswagen AG's CEO Winterkorn stated that the company has commissioned an external probe into the matter.

**10.** According to media sources, Volkswagen CEO Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. In announcing his resignation on September 23, 2015, CEO Winterkorn acknowledged the company's massive scheme to deceive: "I am shocked by the events of the past few days…. Above all, I am stunned that misconduct on such a scale was possible in the Volkswagen Group."

**11.** According to an online media report by *Bloomberg Business* on September 21, 2015, Volkswagen AG's top U.S. executive, Horn, has publicly admitted to the company's wrongdoing in connection with the diesel-emissions cheating scandal. During a corporate event in Brooklyn, New York on the evening of September 20, 2015, Horn made the astonishing revelation: "Our company was dishonest with the EPA, and the California Air Resources Board and with all of

you." Horn further characterized the Company's misconduct by stating, and arguably understating, that: "We have totally screwed up."

12.     On September 22, 2015, *The New York Times* reported that Volkswagen has acknowledged that 11 million of its diesel cars worldwide were equipped with software that was used to cheat on emissions tests and that the Company has set aside the equivalent of half a year's profits – 6.5 billion euros, or about $7.3 billion – to cover the costs associated with its conduct.

## PARTIES

13.     Plaintiff Midland Industries, Inc. ("Midland") is a corporation headquartered in Illinois.

14.     Defendant Volkswagen is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of the State of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of the proposed class is of diverse citizenship from one defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

16.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

17.     This Court has personal jurisdiction over Defendant because it conducts business in Illinois, and has sufficient minimum contacts with Illinois. For example, Defendant is registered with the Illinois Department of State to do business as a corporation in the state, under File No. 50253171.

18.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to class members residing in this District.

**FACTS**

19.    At relevant times: Volkswagen and/or its affiliates and agents intentionally:

a. Manufactured, distributed, sold and warranted vehicles under the Volkswagen and Audi brand names throughout the United States.

b. Designed, manufactured and installed "CleanDiesel" and TDI engines systems in Affected Vehicles and incorporated "defeat devices;"

c. Developed and disseminated associated owners' manuals and warranty booklets, advertisements, and other promotional materials;

d. Prominently employed Defendant's slogan, "Truth in Engineering," on Audi vehicle stickers that it uses to market and sell vehicles (*see e.g.* Ex. A):



e. Marketed the Affected Vehicles while using the specific term "Clean Diesel" while emphasizing the "Clean" element, e.g., by creating a website at the address www.clearlybetterdiesel.org, where Defendant indicates that Clean Diesel technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner;"

f.  Emphasized "green" messaging, stating, e.g., on its website, that "Volkswagen Group places environmental sustainability at the core of our operating philosophy. We don't just talk about it, we take action, finding inventive ways to be responsible in everything we do – and everyone, including our employees, suppliers and sales partners, is equally committed to ongoing improvements and innovations. As a result, we are on our way toward our goal of becoming the world's most environmentally sustainable automaker by 2018" and launching a "Think Blue" program, through which Defendant identified a policy of being "more responsible on the road and more environmentally conscious – not just in our cars."

g.  Emphasized and promoted the fact that the Audi A3 CleanDiesel TDI and Volkswagen Jetta CleanDiesel TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively;

h.  Equipped the vehicle with an emissions control "defeat device" of the type described above;

i.  Charged premium prices for the Affected Vehicles, from between at least 5% above the cost of a comparable gas model, to, for some models, over 25% higher than cost of a comparable gas make and model.

**20.**  On or about  April 5, 2010 The Vice President of Midland Industries, Inc. ("Plaintiff"), Judd Spector, purchased a new 2010 Audi A3 ("vehicle" or "the vehicle") from The Audi Exchange, an authorized Audi dealer in Highland Park, Illinois for use as a company car. *See* Ex. A. Plaintiff Midland still owns the vehicle.

21.     During ordinary operation and use, the vehicle, by design, emits 10 to 40 times the level of pollutants, including nitrogen oxides ("NOx") identified as emitted during pollution testing.

22.     The defendant did not disclose that it had equipped the vehicle with a "defeat device."

23.     The usual practice of Plaintiff's officers was to lease vehicles for company use rather than purchase them.

24.     Plaintiff and Class Members purchased the vehicle with the belief that the vehicle complied with U.S. emissions standards while simultaneously maintaining high performance and fuel efficiency.

25.     Plaintiff and Class Members did not know about the "defeat device" when it purchased the vehicle.

26.     If the Plaintiff and Class Members had known that the vehicle, in normal operation, and by design, emitted 10 to 40 times the level of pollutants identified as being emitted during pollution testing, and that the vehicle accomplished putative compliance with U.S. emissions standards through use of the "defeat device," Plaintiff and Class Members would either not have paid as much for the Audi A3, or would not have purchased it at all.

27.     Purchasers of the Affected Vehicles, including the Plaintiff and Class Members have suffered, and will continue to suffer, significant harm because:

a.  It is highly unlikely that Volkswagen will be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. Consequently, even if Volkswagen is able to make Plaintiff and Class members' Affected Vehicles EPA compliant, Plaintiff and Class Members will pay more in fuel for their less efficient cars over the years they own their vehicles.

    b.  Second, Volkswagen's conduct will stigmatize the Affected Vehicles and diminish consumer confidence in Audi and Volkswagen brands and diesel engines generally, resulting in a diminution in value of every Affected Vehicle.

    c.  Third, Plaintiff and the Class lost some or all of the original sales value as they overpaid and/or would not have paid at all for the Affected Vehicles at the time of purchase as the Affected Vehicles because the Affected Vehicles did not comply with governmental regulations as advertised.

### CLASS ACTION ALLEGATIONS

**28.**    Plaintiff brings this action on behalf of itself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities in the State of Illinois who bought any of the Affected Vehicles, including, without limitation: Volkswagen Jetta, Model Years ("MY") 2009-2015; Volkswagen Jetta Sportwagen, MY 2009- 2015; Volkswagen Golf, MY 2010-2015; Volkswagen Beetle, MY 2012-2015; Volkswagen Beetle Convertible, MY 2012-2015; Volkswagen Passat, MY 2012- 2015; and Audi A3, MY 2010-2015.

**29.**    Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel systems. Also excluded from the Class are: Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

**30.**    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

31.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

32.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

33.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a) Whether Volkswagen engaged in the conduct alleged herein;
(b) Whether Volkswagen designed, advertised, marketed, distributed, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;
(c) Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with EPA requirements;
(d) Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;
(e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;
(f) Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";
(g) Whether Volkswagen's conduct violates consumer protection statutes, and/or other laws as asserted herein;
(h) Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;
(i) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and
(j) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

34. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

35. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff is an adequate Class representative because: its interests do not conflict with the interests of the other members of the Class it seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and their counsel.

36. **Declaratory and Injunctive Relief (Fed. R. Civ. P. 23(b)(2)):** Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

37. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

38. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## STATUTES OF LIMITATION

**39.** For the following reasons, any otherwise-applicable statutes of limitation have been tolled or are otherwise inapplicable with respect to all claims alleged in this Complaint.

**40.** Within the time period of any applicable statutes of limitation, Plaintiff and other Class members, through the exercise of reasonable diligence, could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of the Affected Vehicles, including but not limited to Volkswagen's unlawful use of emission defeat devices.

**41.** As reported in *The New York Times* on September 18, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software.

**42.** As reported on September 27, 2015 by the BBC, Volkswagen knew of the defeat device approach as early as 2011 and unidentified sources stated that a part supplier to Volkswagen had warned the Defendant not to use the devices outside of internal company testing as early as 2007. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

**43.** Plaintiff and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed

to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

44.    Likewise, a reasonable and diligent investigation could not have discovered that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiff immediately before this action was filed. Plaintiff and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

45.    Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class members the true character and quality of the Affected Vehicles.

46.    Volkswagen was also under a continuous duty to disclose to Plaintiff and other Class members that it had engaged in the scheme complained of herein to evade applicable federal and state emissions and clean air standards, and that it systematically and deliberately flouted its compliance with those standards and other federal and state law.

47.    Volkswagen instead knowingly, affirmatively and actively concealed the true nature, quality, and character of the Affected Vehicles and their unlawful emissions and emissions systems.

48.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations or laches defense in this action.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (Common Law)

**49.** Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

**50.** Volkswagen, individually and with respect to Plaintiff's purchase, by its Audi subsidiary which it owns and operates, offered for sale the Audi A3 diesel vehicle purchased by the Plaintiff, and other Affected Vehicles, on terms that promised said vehicles had high performance including e.g. specified fuel efficiency combined with emissions that met federal and state guidelines.

**51.** Plaintiff and the Class accepted Defendant's offers of sale and purchased the Affected Vehicles without knowing of the existence of the "defeat device" and/or defective design as alleged herein. Plaintiff and the other Class members would not have purchased these Affected Vehicles, or would not have purchased these Affected Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device" had they known these facts.

**52.** Defendant breached its contracts of sale with Plaintiff and the Class by selling and delivering them vehicles which did not conform with the contract of sale as the Affected Vehicles did not in fact have the safe and compliant emissions promised and any repair is likely to lower performance and/or fuel efficiency and reduce the value of the vehicles. Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the full benefit of their bargain.

53. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT II**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS § 505/1 et seq. (the "Act")**

54. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

55. The Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. " 815 ILCS § 505/2.

56. Defendant misrepresented as part of its marketing to Plaintiff and the Class that its engineering was truthful and resulted in "CleanDiesel" automotive technology and high performance, and that the Affected Vehicles met specified fuel efficiencies, as set forth more fully above.

57. Defendant failed to disclose, at the time of sale of Affected Vehicles and thereafter, (a) that it included, in the Affected Vehicles, its "defeat device"  designed to create the illusion of

compliance with emissions and environmental regulations, contrary to its promises of marketing and selling "green" Affected Vehicles with low, regulation-compliant emissions.

58.     Defendant also failed to disclose at the time of same that its "defeat devices" installed in its Affected Vehicles were themselves unlawful and in violation of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B), that its sale of the Affected Vehicles did not conform to federal standards was additionally unlawful, 42 U.S.C. § 7522(a)(1).

59.     Defendant concealed material facts concerning the Affected Vehicles at relevant times at and/or after the time of sale, including that the Affected Vehicles met government emissions standards only when the "defeat device" was engaged and not during normal operation and that the Affected Vehicles did not have specific performance characteristics with the "defeat device" enabled.

60.     Defendant concealed its "defeat device" by designing it such that it only enabled the Affected Vehicles' emission control systems during emissions testing so as to satisfy that testing criteria, while simultaneously decreasing fuel efficiency and performance.  After the testing was completed, the "defeat device" would disable the Affected Vehicles' emission control systems to allow the Affected Vehicles to exhibit their advertised performance and fuel efficiency characteristics, and allow the vehicles to produce between 10 and 40 times the allowed amounts of pollutants into the atmosphere.

61.     Defendants further failed to disclose at any time in advertising or during the sale processes engaged in by the Plaintiff and members of the Class that the advertised characteristics of the Affected Vehicles were not accurate, that the "defeat devices" existed in the Affected Vehicles, that the Affected Vehicles could only satisfy federal and state emissions requirements

when the "defeat devices" were active, or that the activation of the "defeat devices" would decrease the performance and fuel efficiency of the vehicle when active.

62.     As a direct and proximate result of such conduct, Plaintiff and the Class have suffered actual and economic damages in violation of the Act.

63.     Even if Defendant was to make the Affected Vehicles compliant with state and federal regulations, the Affected Vehicles would not perform as they did when purchased and/or as advertised.

64.     The value of each Affected Vehicle was less at the time of purchase than Defendant led Plaintiff and Class members to believe and has diminished as a result of Defendant's deception and/or failure to disclose; the cost of ownership of the Affected Vehicles will increase to accommodate emissions compliance measures, fuel efficiency will decrease, performance will decrease, and resale value will decrease.

65.     Had Plaintiff and the Class known the above-described omissions and misrepresentations, they would not have purchased the Affected Vehicles, or would have paid less for the Affected Vehicles.

66.     Plaintiff and the Class are also entitled to commensurate injunctive relief pursuant to the Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in its favor and against Defendant, as follows:

   A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel and Plaintiff as representative of the Class;

B.  Damages available under applicable law in an amount to be determined at trial, including without limitation punitive damages and interest;

C.  Injunctive relief to be awarded by the Court;

D.  An award of costs and attorneys' fees available under the Act and applicable law; and

E.  Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

MIDLAND INDUSTRIES, INC., on behalf of itself and all others similarly situated

By:  /s/ Alex Stepick
Alex Stepick
STEPICK LAW, LLC
2260 N. Elston Ave., 2nd Fl. S.
Chicago, IL 60614
Tel: (773) 245-3884
Alex@stepicklaw.com

PROGRESSIVE LAW GROUP, LLC
Adam Urbanczyk, Of Counsel
140 S. Dearborn Street, Suite 315
Chicago, IL 60603
Tel: (312) 787-2717
Adam@progressivelaw.com